UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE ELLIS CALHOUN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 7551 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| BRADLEY WRAY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this suit under 42 U.S.C. § 1983, George Calhoun, Jr., a pretrial detainee at Cook County Jail, alleges that Bradley Wray, a correctional officer, used excessive force against him in violation of the Fourteenth Amendment. Doc. 9. Wray moves for summary judgment. Doc. 48. The motion is granted.

## Background

### A. Calhoun's Noncompliance with Local Rule 56.1

The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Calhoun's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th

Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x. 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant.") (internal citation omitted).

Consistent with the local rules, Wray filed a Local Rule 56.1(a)(3) statement along with his summary judgment motion. Doc. 50. Each assertion of fact in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, Wray filed and served on Calhoun a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. Doc. 51.

Although Calhoun filed writings in response to Wray's summary judgment motion, Docs. 57-58, 63, he did not file either a Local Rule 56.1(b)(3)(B) response to Wray's Local Rule 56.1(a)(3) statement or a Local Rule 56.1(b)(3)(C) statement of additional facts. Accordingly, insofar as they are supported by the evidentiary materials he cites, the facts set forth in Wray's Local Rule 56.1(a)(3) statement are deemed admitted and constitute the entire factual record on which this summary judgment motion will be resolved. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012) ("Because [Plaintiff] failed to file a response to [Defendant's] Local Rule 56.1 statement of facts in the district court, we credit [Defendant's]

uncontroverted version of the facts to the extent that [those facts] [are] supported by evidence in the record."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (same); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) (same).

Calhoun's writings—one declaration and two lists of numbered statements of law and fact—assert certain facts. Those facts are disregarded because facts may be considered on summary judgment only if they are presented via a compliant Local Rule 56.1 statement or response. The declaration may be evidence, but it is not presented via a Local Rule 56.1 statement or response, and the lists of numbered statements of law and fact do not cite any supporting evidence. *See Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Dunhill Asset Servs. III, LLC v. Tinberg*, 2012 WL 3028334, at *3 (N.D. Ill. July 23, 2012) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted); *Curtis v. Wilks*, 704 F. Supp. 2d 771, 789 (N.D. Ill. 2010) ("Any facts plaintiffs assert in their response brief that were not included in their LR 56.1 submissions will not be considered."); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("[F]acts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material.").

The court's decision to disregard Calhoun's non-compliant factual assertions is consistent with *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394 (7th Cir. 2012). *Sojka* holds that where a non-movant properly includes facts sufficient to preclude summary judgment in its Local Rule 56.1(b)(3)(B) response or Local Rule 56.1(b)(3)(C) statement, the district court must consider those facts even if the non-movant does not also refer to those facts in its summary judgment opposition brief. *Id*. at 397-98. Here, Calhoun's problem is not that he properly presented facts under Local Rule 56.1(b)(3) and simply neglected to mention those facts in his brief, but rather that he filed no Local Rule 56.1(b)(3)(B) response or Local Rule 56.1(b)(3)(C) statement at all. *Sojka* did not abrogate the numerous decisions cited above that call for the court to disregard the factual assertions in a non-movant's papers that are not properly set forth in a Local Rule 56.1(b)(3) statement or response.

**B.     Material Facts**

Viewed as favorably to Calhoun as permitted by Local Rule 56.1, *see Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018), the record establishes the following.

Calhoun, as a detainee, and Wray, as a correctional officer, were both assigned to Division 8, Tier 3H, at Cook County Jail. Doc. 50 at ¶¶ 4-5. Five non-audio cameras recorded the tier from different angles. *Id*. at ¶ 1; Doc. 50-1 (computer disc containing the video files from the five cameras). The tier has beds, a desk in a corner for jail staff, and two rows of tables with attached stool-type seating. Doc. 50-1, Camera 22 at 7:38:05.

On October 2, 2018, Calhoun was working at one of the tables, *id*., Camera 22 at 7:38:05-7:45:30, while Wray conducted a check of the tier, Doc. 50 at ¶ 8. A different jail

4

employee asked Calhoun to remove pictures from the wall near his bunk. *Id*. at ¶ 7. Calhoun left the table and approached the jail staff's desk. Doc. 50-1, Camera 22 at 7:45:30-41. For several minutes, Calhoun waited at the desk, interacted with staff, and on one occasion walked from the desk to the table and back. *Id*. at 7:45:41-7:54:11. Calhoun then returned to the table, walking past Wray. *Id*. at 7:54:11-18. As Calhoun passed, Wray spoke to him, *id*. at 7:54:15-18, reminding him to remove his pictures from the wall, Doc. 50 at ¶ 9.

Calhoun flung a piece of paper onto the table and walked twelve feet towards Wray. Doc. 50-1, Camera 22 at 7:54:18-24. Calhoun stopped just outside an arm's length from Wray, *id*. at 7:54:24, and argued that Wray's reminder had been unnecessary, Doc. 50 at ¶ 10. Calhoun agitatedly gestured with his hands at least three times, and made two steps toward Wray, bringing him within striking distance. *Id*. at ¶ 11; Doc. 50-1, Camera 22 at 7:54:23-28.

Wray knew that Calhoun had been involved in physical assaults of other detainees and corrections officers at the Jail. Doc. 50 at ¶¶ 17, 20. Concerned for his safety, Wray extended his hand against Calhoun's chest, pushing him back a couple feet to create space between them. *Id*. at ¶ 12; Doc. 50-1, Camera 22 at 7:54:28-29. The push forced Calhoun to take two small steps backward, but he remained completely vertical throughout. Doc. 50-1, Camera 22 at 7:54:28-29. Calhoun paused, moved a bit to his left, and—about three seconds after being pushed—raised his right leg to kick Wray but then lowered it without kicking him. Doc. 50 at ¶ 13; Doc. 50-1, Camera 22 at 7:54:29-32. Calhoun returned to his bed and began removing his photos from the wall. Doc. 50 at ¶ 14.

Later that day, nurses gave Calhoun ibuprofen after he reported pain. *Id*. at ¶ 15. Calhoun believes that Wray's push aggravated his pre-existing back injuries and pinched nerve. *Id*. at ¶ 16.

## Discussion

Calhoun alleges that Wray "struck [him] … with … malicious and wanton … force" in the "center of [his] chest area," causing his "neck to eject backwards" and "damage [his] reconstructed neck area[] where [his] … C-5 and C-6 (vertebra) ha[d] been replaced." Doc. 9 at 7-8. Because Calhoun is a pretrial detainee and not a prison inmate, his excessive force claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (noting that "excessive force claims brought by convicted prisoners [proceed] under the Eighth Amendment's Cruel and Unusual Punishment Clause, [while] claims brought by pretrial detainees [proceed] under the Fourteenth Amendment's Due Process Clause"); *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010) ("[Plaintiff]'s primary contention is that he was deprived of his Fourteenth Amendment right to due process when [the officer] employed the taser on him. This provision provides the appropriate constitutional standard against which to measure [Plaintiff]'s claim because he was a pretrial detainee at the time he alleges his constitutional rights were violated."). For his Fourteenth Amendment claim to survive summary judgment, Calhoun must adduce evidence sufficient for a reasonable jury to find that: (1) Wray "acted purposefully, knowingly, or perhaps even recklessly"; and (2) Wray's "conduct was objectively unreasonable." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 351, 353 (7th Cir. 2018).

6

Wray seeks summary judgment on the ground that his push of Wray was objectively reasonable. Doc. 49 at 3-4. Where, as here, there are no material factual disputes, objective reasonableness "is a legal determination rather than a pure question of fact for the jury to decide." *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (internal quotation marks omitted). The objective reasonableness inquiry turns on: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. The inquiry must be conducted from the perspective "of a reasonable [correctional] officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Ibid*.

On the summary judgment record, Wray acted in an objectively reasonable manner. The record shows that Calhoun, irritated by Wray's reminder to remove his pictures, tossed a piece of paper onto the table, walked directly towards Wray, gestured at him agitatedly, and came within striking distance. Doc. 50 at ¶¶ 9-11; Doc. 50-1, Camera 22 at 7:54:15-28. Wray knew that Calhoun had been involved in earlier physical assaults of other detainees and correctional officers. Doc. 50 at ¶¶ 17, 20. The combination of Calhoun's gestures, his invasion of Wray's personal space, and Wray's knowledge of Calhoun's past altercations led Wray to reasonably perceive a risk to his safety. *Id*. at ¶ 12. In response, Wray pushed Calhoun once, with just enough force to cause him to take two small steps backward so that Wray was no longer within striking distance. *Ibid*.; Doc. 50-1, Camera 22 at 7:54:28-29. Calhoun did not fall, but remained upright before walking back to his bed. Doc. 50 at ¶ 14; Doc. 50-1, Camera 22 at

7

7:54:28-29. Later that day, nurses gave Calhoun ibuprofen, but the record contains no evidence from which it could be found that the push caused him any injury. Doc. 50 at ¶ 15.

Applying the factors articulated in *Kingsley*, the record establishes that Wray used minimal force to respond to a threat he reasonably perceived, resulting in minimal (if any) injury to Calhoun. *See Kingsley*, 576 U.S. at 397. It follows, as a matter of law, that Wray acted in an objectively reasonable manner. *See McCottrell v. White*, 933 F.3d 651, 664 (7th Cir. 2019) ("[N]ot every malevolent touch by a prison guard gives rise to a [constitutional violation].") (internal quotation marks omitted); *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the [Constitution].") (internal quotation marks omitted); *Guitron v. Paul*, 675 F.3d 1044 1046, (7th Cir. 2012) (holding that the defendant did not use excessive force when he "applied modest force" after the plaintiff "disobeyed a command that was designed to maintain order within the prison"); *Hanson v. Madison Cnty. Detention Ctr.*, 736 F. App'x 521, 530 (6th Cir. 2018) (holding that shoving a detainee was not objectively unreasonable even though video footage suggested that the detainee "did not seem to pose any direct physical threat," reasoning that the defendants "uniformly perceived [the detainee] as taking a combative or aggressive stance" and that this perception was not "objectively unreasonable" given the their need "to make split-second judgments") (internal quotation marks omitted); *Mitchell v. Richter*, 2017 WL 752162, at *9 (E.D. Wis. Feb. 27, 2017) (holding that an officer's "shove" of a pretrial detainee, who had refused two orders to enter his cell, was not objectively unreasonable because the detainee "should have complied with [the defendant's] order" and had a "long history of insubordination," and because the shove used "a modicum of force to maintain institutional

8

order" that,"[a]t most," caused the detainee to "stumble[] forward a few feet" without "fall[ing] or hit[ting] anything before catching himself").

In pressing the contrary result, Calhoun characterizes Wray's push as an "[a]ssault with (Deadly Hands 'Possible Martial Artist')," Doc. 57 at 8, and the use of "[d]eadly [f]orce[,]" comparing it to a lightning or snake strike, *id*. at 10, which "practically" caused him to "fall to his butt." Doc. 63 at 14. Even putting aside the fact that Calhoun did not present his view of the facts via the means required by Local Rule 56.1(b)(3), his characterization of the push is unequivocally refuted by the video evidence. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the [videotape] record that no reasonable jury could have believed him. The Court of Appeals … should have viewed the facts in the light depicted by the videotape."); *Johnson v. Moeller*, 269 F. App'x 593, 596 (7th Cir. 2008) (affirming summary judgment for the defendant on an excessive force claim where "[n]o reasonable juror could believe [the plaintiff's] version of events because [a] security tape show[ed]" that version to be categorically untrue).

Qualified immunity provides an alternative ground for granting Wray summary judgment. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When confronted with a claim for qualified immunity, [the court] must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *Ibid*. Even assuming the record

9

would allow the conclusion that Wray used excessive force in violation of the Fourteenth Amendment, that right was not clearly established as of October 2, 2018.

In deciding whether the right asserted by the plaintiff is clearly established, the court "must define the right in question with a sufficient degree of particularity." *Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015). Thus, the court must examine whether precedent clearly established that an officer's use of a push against an agitated detainee within striking distance of the officer, and whom the officer knows to have a history of altercations, was constitutionally excessive. *See ibid.* ("[T]he scope of the right in issue must be drawn more narrowly than the right of a pretrial detainee to be free from excessive force during his detention; instead, [the court] must examine whether the law clearly established that the use of a Taser on a non-resisting detainee, lying prone and handcuffed behind his back, was constitutionally excessive."). Calhoun can demonstrate that this right was clearly established "by presenting a closely analogous case that establishes that [Wray's] conduct was unconstitutional or by presenting evidence that [Wray's] conduct was so patently violative of [his Fourteenth Amendment right against excessive force] that reasonable officials would know without guidance from a court." *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010). Calhoun does neither. And given the precedents cited above in holding that Wray's push was not objectively unreasonable, the push cannot possibly have been "so patently violative of the [Fourteenth Amendment] that reasonable officials would know without guidance from a court" that it violated a clearly established right. *Estate of Escobedo*, 600 F.3d at 780. It follows that Wray is entitled to qualified immunity.

**Conclusion**

Wray's summary judgment motion is granted. Judgment will be entered in favor of Wray and against Calhoun. If Calhoun wishes to appeal, he must file a notice of appeal with the Clerk of Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1)(A).

August 10, 2020

_____
United States District Judge

11